## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**T.B.M.,**[1]

        **Plaintiff,**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,**

        **Defendant.**

**Case No. 22-2096-DDC**

---

## <u>MEMORANDUM AND ORDER</u>

Plaintiff T.B.M. seeks judicial review under 42 U.S.C. § 405(g) of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits under Title II of the Social Security Act, as amended. Plaintiff has filed a brief asking the court to reverse the Commissioner's decision denying her claim and remand her claim to the Commissioner with directions to award her benefits. Doc. 10 at 33. The Commissioner has filed a response brief, opposing plaintiff's request for judicial review and asking the court to affirm the Commissioner's decision. Doc. 12 at 15. This matter ripened for decision when plaintiff filed a reply brief on August 11, 2022. Doc. 15. Having reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision denying plaintiff benefits. The court explains why, below.

---

[1]     The court makes all its "Memorandum and Order[s]" available online. Therefore, as part of the court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to caption such opinions using only plaintiff's initials.

## I.    Factual Background and Procedural History

On October 15, 2019, plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act.  Doc. 8-6 at 2–6 (AR 206–10).  She alleged disability beginning on July 9, 2018.  *Id.* at 5 (AR 209).  The Commissioner denied plaintiff's claim initially on April 13, 2020, Doc. 8-4 at 2–19 (AR 85–102), and again denied the claim upon reconsideration on October 13, 2020, *id.* at 21–42 (AR 104–25).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  Doc. 8-5 at 15–16 (AR 140–41).  The ALJ conducted a hearing on March 25, 2021, where plaintiff appeared and testified.  Doc. 8-3 at 27, 51–77 (AR 26, 50–76).

 On June 9, 2021, the ALJ issued a written decision concluding that plaintiff was not disabled, as the Social Security Act defines that term, from July 9, 2018, to the decision's date. *Id.* at 27–39 (AR 26–38).  Plaintiff then filed an appeal with the Appeals Council of the Social Security Administration.  Doc. 8-5 at 79–80 (AR 204–05).  On January 13, 2022, the Appeals Council denied plaintiff's request for review.  Doc. 8-3 at 2–8  (AR 1–7).  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review and reversal of the final decision denying her Disability Insurance Benefits.

## II.    Legal Standard

### A.    Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to this question:  Whether substantial evidence in

the record supports the factual findings and whether the Commissioner applied the correct legal standards. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (citation and internal quotation marks omitted). While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted). But they also don't accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such failure justifies reversal only in "'appropriate circumstances'"—in other

words, applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule in *Glass*).  Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

> **B.     Disability Determination**

Claimants seeking Disability Insurance Benefits bear the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits)).  As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. §

404.1520(a)(4).  The claimant must bear the "burden of proof on the first four steps," but the

burden shifts to the Commissioner "at step five to show that claimant retained the RFC to

'perform an alternative work activity and that this specific type of job exists in the national

economy.'"  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v.*

*Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner

determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Hum.*

*Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not

disabled at any point in the analysis, the review stops.").

## III.   Analysis

The ALJ found that plaintiff has the following severe impairments:  Traumatic Brain

Injury/Post-Concussion syndrome with chronic migraines, obesity, Attention Deficit

Hyperactivity Disorder (ADHD), Post-Traumatic Stress Disorder (PTSD), Major Depressive

Disorder, and Generalized Anxiety Disorder.  Doc. 8-3 at 30 (AR 29).  Also, the ALJ found that

plaintiff has the following non-severe impairments:  athralgias/right hip pain, gastroesophageal

reflux disease (GERD), fatty liver, hyperthyroid/hypothyroid, mixed urinary incontinence

status/post interstem, and post reduction nasal fracture with septoplasty.  *Id.*  But, the ALJ

concluded, plaintiff does not have an impairment or combination of impairments that meets the

severity of one of the listed impairments in 20 C.F.R. pt. 404.  *Id.* at 30–32 (AR 29–31).  Instead,

the ALJ determined that plaintiff has the RFC "to perform light work as defined in" 20 C.F.R. §

404.1567(b).  *Id.* at 32 (AR 31).  Specifically, the ALJ found that:

> The claimant can never climb ladders, ropes or scaffolds.  She can have moderate
> exposure to noise, occasional exposure to excessive vibration and pulmonary
> irritants such as fumes, odors, dusts, gases and poorly ventilated areas.  She should
> avoid all unusual hazards defined in SSR 96-9p as "moving mechanical parts of

> equipment, tools, or machinery; electrical shock, working in high exposed places; exposure to radiation; working with explosives; and exposure to toxic caustic chemicals[."]  The claimant is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks; in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes.  The claimant can have occasional interaction with the public and frequent interaction with co-workers and supervisors.

*Id.*  Based on this RFC finding, the ALJ determined that plaintiff was unable to perform any past relevant work.  *Id.* at 38 (AR 37).  But, after considering plaintiff's "age, education, work experience," and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  *Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).  Specifically, the ALJ found from the vocational expert's testimony that plaintiff was capable of performing "the light, unskilled positions" of Housekeeper, Inserting Machine Operator, and Electrical Sub-assembler.  *Id.* at 39 (AR 38).  The ALJ explained that "[b]ased on the testimony of the vocational expert," and "considering [plaintiff's] age, education, work experience, and" RFC, plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id.*  Thus, the ALJ determined that a "finding of 'not disabled'" was "therefore appropriate[.]"  *Id.*

Plaintiff challenges the Commissioner's findings in three ways.  Plaintiff argues that the ALJ erred:  (1) by failing to find that plaintiff's headaches meet or equal a listing, failing to analyze plaintiff's headaches at a later step, and failing to make any determination about how plaintiff's headaches affect plaintiff's RFC; (2) by finding that plaintiff's mental health disorders did not meet a Listing for mental impairments; and (3) by finding that plaintiff had the RFC to perform substantial gainful activity (SGA).  The court addresses each argument, in turn, below.  And, the court concludes, none of plaintiff's arguments provide a reason to disturb the Commissioner's decision.

**A.  The ALJ didn't err in his analysis of plaintiff's headaches.**

*First*, plaintiff argues that the ALJ erred by failing to find plaintiff's headaches meet or equal a listing, failing to analyze plaintiff's headaches at a later step, and failing to make any determination about how plaintiff's headaches affect plaintiff's RFC.

As already explained, the ALJ found that plaintiff had the severe impairment of "Traumatic Brain Injury/Post-Concussion syndrome with chronic migraines[.]"  Doc. 8-3 at 30 (AR 29).  But the ALJ determined—at step three of the analysis—that plaintiff's chronic headaches were not "an impairment . . . that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. pt. 404.  *Id.* at 30–32 (AR 29–31).  Plaintiff argues that the ALJ erred at step three by failing to analyze whether plaintiff's chronic headaches meet or medically equal the criteria of Listing 11.02 based upon SSR 19-4p.

SSR 19-4p "provides guidance on how [the Social Security Administration] establish[es] that a person has a medically determinable impairment (MDI) of a primary headache disorder and how [the Social Security Administration] evaluate[s] primary headache disorders in disability claims under titles II and XVI of the Social Security Act[.]"  SSR 19-4p, 2019 WL 4169635, at *1 (S.S.A. Aug. 26, 2019).  The Ruling explains that examples of a primary headache disorder "include migraines, tension-type headaches, and trigeminal autonomic cephalalgias."  *Id.* at *3.  As SSR 19-4p recognizes, "[p]rimary headache disorder is not a listed impairment in the Listing of Impairments[.]"  *Id.* at *7.  But "a primary headache disorder, alone or in combination with another impairment(s)" may "medically equal[ ] a listing" if "a person with a primary headache disorder . . . exhibit[s] equivalent signs and limitations to those detailed in listing 11.02" for epilepsy (dyscognitive seizures).  *Id.*  The Ruling requires that an acceptable medical source (AMS) diagnose the primary headache disorder after "review[ing] the person's

medical history, conduct[ing] a physical examination, and ma[king] the diagnosis of primary headache disorder only after excluding alternative medical and psychiatric causes of the person's symptoms." *Id.* at *6. Also, "the treatment notes must be consistent with the diagnosis of a primary headache disorder." *Id.*

The Ruling also provides that "only a primary headache disorder" qualifies "as an MDI." *Id.* at *5. The Social Security Administration "will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs because secondary headaches are symptoms of another underlying medical condition[,]" and instead, it "evaluate[s] the underlying medical condition as the MDI." *Id.*

Here, defendant asserts that "it is unclear whether SSR 19-4p even applies to Plaintiff's case" because "the evidence is conflicting and shows that Plaintiff suffered chronic migraines triggered by a past concussion related to [a] domestic violence incident[.]" Doc. 12 at 6 (citing Doc. 8-8 at 120, 172 (AR 482, 534)); *see also* Doc. 8-8 at 90 (AR 452). Also, the record shows that plaintiff's "neurological imaging and balance testing were normal." Doc. 12 at 6 (citing Doc. 8-8 at 11, 477, 716 (AR 373, 839, 1078)).

But, even if SSR19-4p applies here, the ALJ didn't err by failing to discuss it at step three. Another Social Security Ruling, SSR 17-2p provides that, if the ALJ "believes that the evidence . . . does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," then the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017). Instead, the Ruling provides that "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* And, an ALJ's

"articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.*

Here, the ALJ satisfied SSR 17-2p's requirements. At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. pt. 404. Doc. 8-3 at 30 (AR 29). And then, at a later step—specifically, the RFC analysis—the ALJ adequately articulated reasons why plaintiff's chronic headaches were not disabling. *Id.* at 33–37 (AR 32–36); *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (explaining that although the Circuit requires an ALJ "'to discuss the evidence and explain why he found that [a claimant] was not disabled at step three[,]'" an ALJ's failure to do so at step three is harmless if "findings made elsewhere in the ALJ's decision confirm the step three determination under review" (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996))).

Although the ALJ didn't discuss SSR 19-4p or Listing 11.02 explicitly at step three, or whether plaintiff's chronic headaches medically equal a listing, the ALJ wasn't required to do so under SSR 17-2p if "the evidence . . . does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment[.]" SSR 17-2p, 2017 WL 3928306, at *4. Here, no reasonable support exists for a finding that plaintiff's chronic headaches medically equal the criteria of Listing 11.02 based upon the guidance found in SSR 19-4p.

SSR 19-4p explains: "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7. The Ruling notes:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. . . . Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.

*Id.* As the Ruling recognizes, it's "uncommon" for a primary headache disorder (assuming plaintiff's chronic migraines qualify as such a disorder) to exhibit signs and limitations equivalent to those found in Listing 11.02. *Id.* As our court has observed, "[t]his is likely so" because of the regulation's requirements for "dyscognitive seizures." *Jennifer M. A. v. Saul*, No. 20-2159-JWL, 2021 WL 1056426, at *8 (D. Kan. Mar. 18, 2021). The regulations for Listing 11.02 provide:

> Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur.

20 C.F.R. pt. 404, subpt. P, app'x 1 § 11.00(H)(1)(b). As Judge Lungstrum has explained, this regulation "makes clear" that "dyscognitive seizures are characterized by alteration of consciousness." *Jennifer M. A.*, 2021 WL 1056426, at *9. "Thus, when they occur at least once a week for at least three consecutive months they are clearly disabling (Listing 11.02(B)) and when they only occur at least once every two weeks for at least three consecutive months, they require a marked limitation in physical or mental functioning (Listing 11.02(D)) to be presumed disabling." *Id.*

Here, defendant argues, the record contains no evidence that plaintiff's chronic headaches are equivalent in severity to an alteration of consciousness to meet the criteria of either Listing 11.02B or 11.02D.[2] The record shows that plaintiff reported that her headaches occurred "twice

---

[2]   Defendant also argues that plaintiff can't show that her headaches medically equal the criteria of Listing 11.02A or 11.02C because both require "generalized tonic-clonic seizures." 20 C.F.R. pt. 404, subpt. P, app'x 1 § 11.02(A), (C). SSR 19-4p never mentions Listing 11.02A or 11.02C. Even so,

weekly" with "no reported aura."  Doc. 8-8 at 798 (AR 1160).  Plaintiff's headaches "are located in the frontal and occipital region with radiation to the ears" and with "associated photophobia and audiophobia [sensitivity to light and sound]."  *Id.*  Plaintiff reported she was receiving Botox injections and using Imitrex to treat her headaches.  *Id.*  And, between March 2019 and March 2021, plaintiff reported several times to practitioners that the Botox injections were helping her with her headaches and she was experiencing no side effects from that treatment.  *Id.* at 167, 175, 823 (AR 529, 537, 1185); Doc. 8-9 at 16, 56 (AR 1282, 1322).

Plaintiff never reported that her headaches caused an alteration of consciousness.  And none of her medical records evidence any altered consciousness or show that her migraines are equivalent in severity to an alteration of consciousness.  On this record, plaintiff's chronic headaches don't meet or medically equal the specific medical criteria of Listing 11.02B or 11.02D.  *See Jennifer M. A.*, 2021 WL 1056426, at *8–9 (holding that plaintiff's headaches didn't "medically equal the severity of Listing 11.02(B or D) (dyscognitive seizures) as required by SSR 19-4p" because she hadn't "shown that her headaches are equivalent in severity to an alteration of consciousness"); *see also S.T.W. v. Kijakazi*, No. 22-cv-0722-NYW, 2023 WL 244828, at *8–9 (D. Colo. Jan. 18, 2023) (holding that plaintiff failed "to explain how the medical findings related to his headaches are at least of 'equal medical significance to those of' Listing 11.02 under Paragraphs B and D" when he didn't "claim or cite any evidence showing that he experienced dyscognitive seizures during a headache episode"); *Monteiro v. Saul*, No. 1:20-CV-12189-RWZ, 2022 WL 867988, at *5 (D. Mass. Mar. 23, 2022) (holding that even "if

---

defendant argues, plaintiff's chronic headaches don't meet or medically equal the criteria of Listing 11.02A or 11.02C because the record contains no evidence that plaintiff has had a generalized tonic-clonic seizures.  The regulations explain that generalized tonic-clonic seizures "are characterized by loss of consciousness[.]" 20 C.F.R. pt. 404, subpt. P, app'x 1 § 11.00(H)(1)(a).  Here, no evidence suggests that plaintiff ever lost consciousness during one of her headaches.  Thus, her impairment doesn't meet or medically equal Listing 11.02A or 11.02C.

the ALJ erred by not explicitly addressing Plaintiff's migraines pursuant to SSR 19-4p, any such error was harmless" because plaintiff didn't "identify any evidence in the record that would indicate that her migraines are equivalent in severity to an alteration of consciousness"); *Shawna Marie N. v. Kijakazi*, No. 21-2076-JWL, 2022 WL 579252, at *4 (D. Kan. Feb. 25, 2022) (holding that plaintiff's "argument that her headaches medically equal the criteria of Listing 11.02 based upon SSR 19-4p is not supported by the record evidence during the relevant time period").

Thus, plaintiff hasn't shown that her chronic headaches meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (citation omitted)). And, the court holds, the ALJ properly determined, at step three, that plaintiff's chronic headaches did not meet or medically equal a listing.

Also, the ALJ's RFC analysis properly articulated reasons why plaintiff's chronic headaches are not disabling, supporting his earlier conclusions at step 3. The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It defines the most an individual can do despite limitations. *Id.* ("RFC is not the *least* an individual can do despite his or her limitation or restrictions, but the *most*.").

The "ALJ, not a physician, is charged with determining a claimant's RFC from the medial record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citations omitted).

The RFC assessment is an administrative determination, not a medical one. *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). The ALJ should base the RFC determination on "all of the evidence in the record, not only the medical evidence[.]" *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).

The ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p, 1996 WL 374184, at *7. But the ALJ need not discuss every piece of evidence so long as the findings demonstrate the ALJ considered the whole record. *Clifton*, 79 F.3d at 1009–10.

Here, the ALJ determined that plaintiff "has the [RFC] to perform light work as defined in" 20 C.F.R. § 404.1567(b). Doc. 8-3 at 32 (AR 31). The ALJ explained that when "making this finding," he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of" 20 C.F.R. § 404.1529 and SSR 16-3p. *Id.* Also, the ALJ said he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of" 20 C.F.R. § 404.1520c. *Id.*

Based on that evidence—and other evidence discussed in the ALJ's decision (*see* Doc. 8-3 at 32–38 (AR 31–37))—the ALJ reached his conclusions about plaintiff's RFC and explained it was "supported by the medical evidence of record, the record as a whole, State agency findings and testimony[,]" *id.* at 38 (AR 37). Thus, the ALJ's decision included the required "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts

. . . and nonmedical evidence."  SSR 96-8p, 1996 WL 374184, at *7; *see also Terry v. Colvin*,

No. 14-2110-JWL, 2015 WL 400907, at *11 (D. Kan. Jan. 28, 2015) (explaining that SSR 96-

8p's required narrative discussion doesn't "require citation to a medical opinion, or even to

medical *evidence* in the administrative record for each RFC limitation assessed" but does require

the ALJ to "describe how the evidence supports the RFC conclusions, and cite specific medical

facts and nonmedical evidence supporting the RFC assessment" (citations and internal quotation

marks omitted)).  The ALJ satisfied that obligation by discussing the evidence about plaintiff's

headaches, as well as her other severe impairments.  *See* Doc. 8-3 at 32–38 (AR 31–37)

   Specifically, for plaintiff's headaches, the ALJ explained that on February 12, 2019,

plaintiff had reported her headaches to an ENT.  Doc. 8-3 at 33 (AR 32) (citing Doc. 8-8 at 11

(AR 373)).  The ENT noted that imaging from neurology was unremarkable and plaintiff's

balance testing revealed no abnormal findings.  *Id.* (citing Doc. 8-8 at 11 (AR 373)).  The ALJ

noted that plaintiff's routine healthcare visits documented her "chronic migraines triggered by

concussion."  *Id.* (citing Doc. 8-8 at 172 (AR 534)).  But plaintiff reported that she had "benefit"

from treating her headaches with Botox injections and sustained no side effects.  *Id.* (citing Doc.

8-8 at 172 (AR 534)).  Indeed, the record shows that plaintiff continued to report to her

healthcare providers—over many months—that the Botox injections were helping her with her

headaches.  *See, e.g.*, Doc. 8-8 at 167 (AR 529) (reporting on Mar. 20, 2019 that Botox "has been

helpful"); *id.* at 716 (AR 1078) (reporting on July 31, 2019 that Botox was "somewhat helpful");

*id.* at 175 (AR 537) (reporting on Aug. 28, 2019 that she had "seen at least 50% improvement in

her headaches"); *id.* at 823 (AR 1185) (reporting on June 3, 2020 that "Botox has been helpful, at

least 50% reduction in headache days"); Doc. 8-9 at 56 (AR 1322) (reporting on Aug. 26, 2020

that "Botox has been helpful[,]" that she "has had very few headaches[,]" and "at least 50%

reduction in headache days"); *id.* at 47 (AR 1313) (reporting on Sept. 21, 2020 that Botox has

"been very helpful overall" with no side effects); *id.* at 16 (AR 1282) (reporting on Mar. 3, 2021

that Botox was "[h]elping, but does not last the full 12 weeks").

The ALJ recognized that on March 7, 2020, plaintiff complained to Dr. Kyle Busch of

"migraines" and "reported a history of headaches dating back 18 months."  Doc. 8-3 at 34 (AR

33) (citing Doc. 8-8 at 798 (AR 1160)).  Plaintiff reported that the headaches occurred twice a

week with no reported aura.  *Id.* (citing Doc. 8-8 at 798 (AR 1160)).  But also, she reported that

she was treating the headaches with Botox and Imitrex.  *Id.* (citing Doc. 8-8 at 798 (AR 1160)).

Also, Dr. Busch noted "[n]o objective findings [of headaches] appreciated today[,]" in his

conclusions from his evaluation.  Doc. 8-8 at 801 (AR 1163).

The ALJ then discussed "a neuro-physical evaluation" performed on April 23, 2020.

Doc. 8-3 at 34 (AR 33).  It reported plaintiff was "alert, cooperative and oriented and was able to

follow test instructions" and that plaintiff had "normal neuropsychological functions in sensory

functions of visual, auditory, tactile and olfactory modalities, eye-hand coordination and grip

strength."  *Id.* (citing Doc. 8-8 at 862–63 (AR 1224–25)).  Also, on January 15, 2020, plaintiff's

"mental status exam noted normal cognitive performance post TBI, organized thought process

and intact insight."  *Id.* at 35 (AR 34) (citing Doc. 8-8 at 850 (AR 1212)).

The ALJ recognized that "[o]bjective findings note that [plaintiff] has headaches with

some neurological treatment[,]" but plaintiff had never "presented to the emergency room, been

inpatient at the hospital or had any other physician intervention for intractable headaches."  *Id.*

Also, the ALJ noted that "neurological examinations have been relatively normal and [plaintiff]

demonstrated an ability to return to work after her traumatic brain injury."  *Id.* (citing Doc. 8-8 at

472, 509 (AR 834, 871)).  And the ALJ again mentioned that Botox was helping plaintiff's headaches.  *Id.* at 35–36 (AR 34–35) (citing Doc. 8-9 at 47 (AR 1313)).

The ALJ also considered the "State agency medical consultants [who] opined that [plaintiff] was capable of light work" subject to certain restrictions.  *Id.* at 37 (AR 36).  The ALJ noted that the State agency medical consultants' findings were "consistent with lack of significant findings on physical examinations and effective treatment with Botox and injections" for plaintiff's headaches.  *Id.*  Also, the ALJ explained that the findings were "consistent with normal neurological examinations and lack of emergency room visits or ongoing physician intervention for intractable headaches."  *Id.*  So, the ALJ found persuasive the State agency medical consultants' opinions that plaintiff was capable of performing light work despite her severe impairments, including her chronic headaches.  *Id.*

Plaintiff argues that the ALJ should have found that her chronic headaches are disabling based on her testimony that she "has significant difficultly in physical functioning resulting from her headaches."  Doc. 10 at 19 (citing Doc. 8-3 at 66 (AR 65)).  The testimony plaintiff cites doesn't support her assertion that her headaches make it significantly difficult for her physical functioning.  *See* Doc. 8-3 at 66 (AR 65).  In any event, to the extent plaintiff challenges the ALJ's credibility determinations by concluding that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," Doc. 8-3 at 33 (AR 32), the ALJ cited substantial evidence—including medical treatment records—to support his RFC conclusions. The court can't disturb those conclusions based on plaintiff's cited testimony.  *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) ("Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported

by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." (citations and internal quotation marks omitted)).

Also, plaintiff cites certain medical records to argue that her headaches occur frequently and that her symptoms are extremely limiting.  Doc. 10 at 19.  But the large majority of the cited medical records are from 2018 and early 2019—not long after plaintiff sustained her concussion in the domestic violence incident on July 8, 2019.  As the ALJ recognized, other—and more recent—medical records show that plaintiff's neurology imaging was unremarkable, balance testing didn't reveal abnormal findings, neurological examinations were relatively normal, and Botox injections were helping plaintiff's headaches.  Doc. 8-3 at 33, 35–36 (AR 32, 34–35).

Plaintiff's differing interpretation of the record evidence doesn't show that the ALJ erred. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence" and instructing that courts may not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo" (citation and internal quotation marks omitted)).

In sum, the ALJ's decision shows that he considered the whole record and appropriately cited his reasons for accepting and rejecting the evidence used to support his RFC determination. *Clifton*, 79 F.3d at 1009–10 (explaining that an ALJ "is not required to discuss every piece of evidence" in the administrative record as long as the ALJ's findings "demonstrate that the ALJ considered all of the evidence" as a whole).  Thus, plaintiff hasn't shown that the ALJ erred when evaluating plaintiff's chronic headaches in his RFC assessment.

Also, and even though the ALJ's step three never made these findings about plaintiff's headaches explicitly, the ALJ properly articulated his reasoning at a later step—*i.e.*, in the RFC analysis—to support his step three findings that plaintiff's headaches did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(c). *See* SSR 17-2p, 2017 WL 3928306, at *4 (explaining that an ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3"); *see also Fisher-Ross*, 431 F.3d at 733–34 (explaining that an ALJ's failure to discuss the evidence and explain why he found that the claimant is not disabled at step three is harmless if "findings made elsewhere in the ALJ's decision confirm the step three determination under review"). The court thus holds that the ALJ's conclusions about plaintiff's chronic headaches are supported by substantial evidence in the record as a whole.

**B. The ALJ didn't err in his analysis of plaintiff's mental health disorders.**

*Second*, plaintiff argues that the ALJ erred by finding that plaintiff's mental health disorders didn't meet a Listing for mental impairments. The ALJ concluded that the "severity of [plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 [neurocognitive disorders], 12.04 [depressive, bipolar and related disorders], 12.06 [anxiety and obsessive-compulsive disorders], 12.11 [neurodevelopmental disorders], and 12.15 [trauma- and stressor-related disorders]." Doc. 8-3 at 30 (AR 29). The ALJ explained, when "making this finding" that plaintiff didn't meet any Listing for a mental impairment, the ALJ "considered whether the 'paragraph B' criteria are satisfied." *Id.*

To establish that plaintiff meets one of the Listings, plaintiff needed to satisfy the "paragraph B" criteria by demonstrating her mental impairments resulted in "one extreme limitation or two marked limitations in a broad area of functioning." *Id.*; *see also* 20 C.F.R. pt. 404, subpt. P, app'x 1 §§ 12.02(B), 12.04(B), 12.06(B), 12.11(B), 12.15(B). "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis." Doc. 8-3 at 30 (AR 29). While a marked limitation "is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Id.*

Within paragraph B, the four criteria for mental functioning are the ability to:

1.  Understand, remember, or apply information
2.  Interact with others
3.  Concentrate, persist, or maintain pace
4.  Adapt or manage oneself

20 C.F.R. pt. 404, subpt. P, app'x 1 §§ 12.02(B), 12.04(B), 12.06(B), 12.11(B), 12.15(B) (citations omitted). The ALJ's decision addressed each of these four criteria. *See id.* at 31 (AR 30) (discussing the criteria found in 20 C.F.R. pt. 404, subpt. P, app'x 1 §§ 12.02(B), 12.04(B), 12.06(B), 12.11(B), 12.15(B)).

*First*, the ALJ found that in "understanding, remembering or applying information, [plaintiff] has a moderate limitation." *Id.* at 31 (AR 30). Plaintiff reported that she has difficulty with memory. *Id.* The ALJ determined, however, that plaintiff "is able to recognize and correct mistakes, perform multi-step activities, use reasoning and judgment to make decisions and follow through with medical advice." *Id.*

*Second*, the ALJ found that plaintiff had a moderate limitation in interacting with others. *Id.* To support this conclusion, the ALJ explained that plaintiff "is able to maintain a relationship with family and friends[,]" and she's "able to shop alone in public (non-busy times)." *Id.* Also, the ALJ found that "the record does not document the claimant having any problems in

functioning socially when seeking treatment." *Id.* "For example, she is not noted to have had difficulty waiting in public areas, to behave inappropriately with office staff, or to be unable to form a therapeutic rapport with treatment providers." *Id.*

*Third*, the ALJ found that plaintiff had a moderate limitation with concentrating, persisting or maintaining pace. *Id.* Although plaintiff reported "problems with focus and concentration[,]" the ALJ found that she "is able to maintain conversation and perform simple math calculations." *Id.* Also, the ALJ noted that plaintiff "is primary caregiver for her children and she is able to watch her very young grandchildren (including toddlers) once a month for a couple of hours at a time." *Id.*

*Fourth*, the ALJ determined that plaintiff had a moderate limitation with adapting or managing oneself. *Id.* To support that finding, the ALJ explained that plaintiff "is able to make plans, maintain hygiene, and recognize hazards." *Id.*

After considering each of the four criteria listed in paragraph B, the ALJ concluded that plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," and as a consequence, the ALJ concluded that "the 'paragraph B' criteria [were] not satisfied." *Id.*

On appeal, plaintiff challenges each of the above findings for the 12.02, 12.04, 12.06, 12.11, and 12.15 Listing. She argues that the ALJ failed to cite any record evidence at step three of his analysis when discussing the paragraph B criteria. Doc. 10 at 22 (citing Doc. 8-3 at 31 (AR 30)). Also, she cites other record evidence that, she contends, establishes that she has greater limitations than the ALJ determined and satisfies the paragraph B criteria.[3] *Id.* at 23–27 (citations omitted).

---

[3]     Plaintiff also argues that she satisfies the paragraph A criteria for each of the Listings, but "omit[s] for brevity" a "recitation of specific Paragraph A criteria[,]" and instead, "focuses her

Although the ALJ didn't cite record evidence to support his findings about plaintiff's mental health conditions at step three, his RFC analysis includes citation to substantial record evidence supporting his findings at step three. *See Fisher-Ross*, 431 F.3d at 733–34 (explaining that although the Circuit requires an ALJ "'to discuss the evidence and explain why he found that [a claimant] was not disabled at step three[,]'" an ALJ's failure to do so at step three is harmless if "findings made elsewhere in the ALJ's decision confirm the step three determination under review" (quoting *Clifton*, 79 F.3d at 1009)).

For the *first* paragraph B criteria—the ability to understand, remember, or apply information—the ALJ discussed plaintiff's neuro-psychological evaluation in April 2020. Doc. 8-3 at 34 (AR 33). The ALJ noted that plaintiff was "alert, cooperative and oriented and was able to follow test instructions." *Id.*; *see also* Doc. 8-8 at 862 (AR 1224) (reporting that plaintiff "showed normal ability of encoding new verbal information and normal verbal learning progress when the same information was presented repetitively for her to learn across learning trials"). The ALJ recognized that plaintiff had "some severe impairment in attention and concentration and mental control[,]" but her speech "was fluent and articulate and behavior was socially appropriate." Doc. 8-3 at 34 (AR 33); *see also* Doc. 8-8 at 862–63 (AR 1224–25). Also, plaintiff "showed no evidence of hallucination, delusion, paranoia or other psychotic symptoms." Doc. 8-3 at 34 (AR 33); *see also* Doc. 8-8 at 863 (AR 1225).

---

contentions" on the "'paragraph B' criteria[.]" Doc. 10 at 22. Defendant does the same thing and argues that, because plaintiff can't show that she meets the paragraph B criteria, she can't show that her mental health disorders meet or medically equal one of the Listings, regardless whether she meets the paragraph A criteria. Doc. 12 at 10 n.4. The court agrees. The Listings require plaintiff to satisfy both the paragraph A and B criteria. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1 §§ 12.02(B), 12.04(B), 12.06(B), 12.11(B), 12.15(B). Here, because the court finds that substantial record evidence supports the ALJ's decision that plaintiff doesn't satisfy the paragraph B criteria, plaintiff can't show that her mental health disorders meet or equal the Listings. *See Zebley*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Also, the ALJ considered plaintiff's records from Flint Hills Community Behavioral Health. Doc. 8-3 at 35 (AR 34). In January 2020, plaintiff's mental status exam "noted normal cognitive performance post TBI, organized thought process and intact insight." *Id.*; *see also* Doc. 8-8 at 850 (AR 1212). The exam noted that plaintiff had "some short-term memory issues" but her mood "was normal and behavior cooperative." Doc. 8-3 at 35 (AR 34) (citing Doc. 8-8 at 850 (AR 1212)). Plaintiff's mental status findings "were similar in a return visit dated February 13, 2020[,]" and "remained within normal limits" at a June 2020 examination. Doc. 8-3 at 35 (AR 34) (citing Doc. 8-8 at 830 (AR 1192)); *see also* Doc. 8-8 at 828–32, 845 (AR 1190–94, 1207). And, after an October 2020 examination, the Flint Hills Community Behavioral Health provider reported that plaintiff was "adequately groomed and was fully oriented[,]" her speech "was clear and attention/concentration and memory intact[,]" she didn't "appear a danger to herself or others[,]" and her "[m]ood, insight and judgment were within normal limits." Doc. 8-3 at 35 (AR 34) (citing Doc. 8-9 at 165 (AR 1431)).

The ALJ also explained that he considered the opinion of the State agency psychological consultants. *Id.* at 36 (AR 35). The consultants "opined that [plaintiff] had moderate functional limitations" but "retained the ability to understand and remember simple instruction and retained sufficient mental capacity to concentrate on, understand, and remember unchanging, less than four step instructions" although she "would be impaired for detailed or complex instructions." *Id.* (citing Doc. 8-4 at 2–19, 21–42 (AR 85–102, 104–25)).

To argue that plaintiff has marked limitation in this first paragraph B criteria, she cites a medical record from a December 2020 exam reporting that she has "poor ability of holding information in working memory, impairment of verbal memory and conceptual reasoning." Doc. 10 at 26 (citing Doc. 8-9 at 143 (AR 1409)). But this same report noted that plaintiff has

"Normal/Adequate/Intact" memory, intact concentration, organized thought process, and clear and coherent speech. Doc. 8-9 at 145 (AR 1411). Plaintiff also cites an April 2021 report from a Licensed Medical Social Worker who opined that plaintiff "has 'a steady decline in [her] mental health, cognition . . . in her ability to maintain her home,' and 'poor emotional regulation, behavioral outburst . . . that impair her life and ability to gain employment.'" Doc. 10 at 26 (citing Doc. 8-9 at 115 (AR 1381)). But the ALJ explained—explicitly—that he had considered the "multiple opinions in [the] file from [plaintiff's] social worker noting that [plaintiff] is unable to work[,]" but he found the social worker's opinions "not persuasive." Doc. 8-3 at 37 (AR 36). He reached this conclusion because he found that the social worker's opinions were "inconsistent with the medical evidence as a whole including mental status examinations, daily activities and lack of emergency room or inpatient treatment." *Id.*; *see also id.* (explaining that social worker's opinions were not persuasive because they were "inconsistent with treatment notes, mental status exams and daily activities including being primary caregiver for [plaintiff's] child as well as watching her toddler grandchildren"). Also, the ALJ recognized that plaintiff's "records note improvement on medication." *Id.*

Thus, the ALJ supported his finding that plaintiff had "moderate limitation" in the first paragraph B criteria, *id.* at 31 (AR 30), by citing substantial evidence from the administrative record, including plaintiff's medical records, *id.* at 34–37 (AR 33–36). Although plaintiff cites other evidence that—she contends—supports a finding that she has more limitations than the ALJ determined, the court here can't "reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (citation and internal quotation marks omitted). As our Circuit has noted, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

evidence.'" *Id.* (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  And the court can't "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

For the *second* paragraph B criteria—ability to interact with others—the ALJ noted that plaintiff's July 2020 function report stated that plaintiff "spent time socializing and attended Church on a weekly basis."  Doc. 8-3 at 36 (AR 35) (citing Doc. 8-7 at 92–102 (AR 331–41)). Also, plaintiff is "the primary caretaker for a child with difficulties[,]" and plaintiff "watches her toddler grandchildren a couple of hours a month, which is consistent with an ability to function." *Id.*  The record supports these findings, as well as the ALJ's findings at step three that plaintiff "is able to shop alone in public (non-busy times)" and doesn't have "any problems in functioning socially when seeking treatment."  Doc. 8-3 at 31 (AR 30); *see also* Doc. 8-3 at 52, 70–71 (AR 51, 69–70) (testifying that plaintiff watches one of her toddler grandchildren for a couple of hours at a time, she goes shopping perhaps once a week at less crowded stores, and she attends baseball and softball games for her children); Doc. 8-7 at 65–77 (AR 304–16 (reporting in a November 2019 function report that plaintiff's daily activities include "spending time with others in person, talking to others on the phone, [and] isolating [herself] from others," and that plaintiff shops for groceries and other household items on a weekly basis); *id.* at 92–102 (AR 331–41) (reporting in a July 2020 function report that plaintiff's daily activities include "spending time with others in person, talking to others on the phone, [and] isolating [herself] from others," and that plaintiff shops for groceries and other household items a few times a month).

To argue that the record evidence doesn't support the ALJ's conclusion for the second paragraph B criteria, plaintiff cites other portions of the record where she reported that she often

has to leave church early and that she socializes with family and friends less often than she used to do.  Doc. 15 at 7.  But these few examples don't detract from the substantial record evidence (discussed in the above paragraphs) the ALJ cited to support his findings that plaintiff only has a moderate limitation in interacting with others.  The court can't reweigh this evidence or disturb the ALJ's finding on this record.

For the *third* paragraph B criteria—ability to concentrate, persist, or maintain pace—the ALJ found that plaintiff has only moderate limitation because she "is able to maintain conversation and perform simple math calculations."  Doc. 8-3 at 31 (AR 30).  Also, the ALJ noted that that plaintiff "is primary caregiver for her children and she is able to watch her very young grandchildren (including toddlers) once a month for a couple of hours at a time."  *Id.*  The ALJ supported these findings with record evidence in the RFC analysis.  *See id.* at 36 (AR 35) (citing Doc. 8-7 at 92–102 (AR 331–41)); *see also* Doc. 8-7 at 93, 97 (AR 332, 336) (reporting in a July 2020 function report that plaintiff cares for her child by providing "personal care, transportation, preparing meals/feeding, shopping, picking up prescriptions, [and] schoolwork" and that plaintiff can pay bills, count change, handle a savings account, and use a check book); Doc. 8-3 at 52 (AR 51) (testifying that plaintiff watches one of her toddler grandchildren for a couple of hours at a time).

Plaintiff argues that the ALJ erred in his findings on the third paragraph B criteria because the record shows that her ability to care for her children and grandchildren and perform household tasks is much more limited than the ALJ described.  Doc. 10 at 23; Doc. 15 at 7.  Also, plaintiff relies on the social worker's opinion that plaintiff has "'an inability to maintain her home life/daily activities' that 'overwhelms her,' and she 'struggles with disorientation frequently; mixes up her appointment date and times, and lacks energy on a daily basis.'"  Doc.

10 at 26 (citing Doc. 8-9 at 115 (AR 1381)).  But, as already discussed, the ALJ found the social

worker's opinions not persuasive because they weren't consistent with other record evidence.

Doc. 8-3 at 37 (AR 36).  Instead, the ALJ found persuasive the opinions of the State agency

consultants who "opined that [plaintiff] had moderate functional limitations[,]" a finding that

was consistent with the fact that plaintiff had "no emergency room visits or inpatient stays for

any alleged psychological complaint and reported activities including caring for children."  *Id.* at

36–37 (AR 35–36) (citing Doc. 8-4 at 2–19, 21–42 (AR 85–102, 104–25)).

Again, plaintiff asks the court to reweigh the evidence and conclude from her cited

evidence that she has more limitations than the ALJ determined.  The court can't engage in that.

*See Lax*, 489 F.3d at 1084 (explaining that the court "will not reweigh the evidence or substitute

[its] judgment for the Commissioner's" (citation and internal quotation marks omitted)).

Finally, for the *fourth* paragraph B criteria—ability to adapt or manage oneself—the ALJ

found at step three that plaintiff only had "moderate limitation" because she is "able to make

plans, maintain hygiene, and recognize hazards."  Doc. 8-3 at 31 (AR 30).  The ALJ cited

substantial evidence in his RFC analysis to support this conclusion.  *See, e.g.*, *id.* at 35 (AR 34)

(noting that plaintiff was "adequately groomed and was fully oriented" at an October 2020

appointment (citing Doc. 8-9 at 165 (AR 1431))); *id.* at 36 (AR 35) (noting that plaintiff "was

able to bathe and feed herself" and "prepared simple meals, did laundry and shopped on

occasion" (citing Doc. 8-7 at 92–102 (AR 331–41))).  Again, plaintiff cites other evidence in the

record (including the social worker's opinion) and argues that this evidence shows her ability to

perform household tasks and care for children is more limited than what the ALJ determined.

Doc. 10 at 24, 27; Doc. 15 at 7.  But, as already explained, plaintiff cannot show error by "the

mere fact that there is evidence which might support a contrary finding[.]"  *Nicholas P. S. v.*

*Saul*, No. 20-2360-JWL, 2021 WL 2711172, at *7 (D. Kan. July 1, 2021).  The court here cannot "'displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Id.* (quoting *Lax*, 489 F.3d at 1084).

In sum, the court concludes that substantial evidence supports the ALJ's finding that plaintiff's mental health disorders did not meet or medically equal a Listing for mental impairments.  Plaintiff hadn't shown to the ALJ that her impairments satisfied the paragraph B criteria.  Thus, plaintiff hasn't shown that the ALJ erred in his analysis of her mental health disorders.

### C.  The ALJ didn't err when he concluded that plaintiff has the RFC to perform substantial gainful activity.

*Third*, plaintiff argues that the ALJ erred by finding that plaintiff had the RFC to perform substantial gainful activity.  She argues that the ALJ erred by finding that her ability to perform certain daily activities supported his conclusion that she was capable of performing simple light work.  Doc. 10 at 28–29.  Also, she contends that the ALJ erred by finding the Licensed Medical Social Worker's opinions not persuasive.  *Id.* at 30–32.

The court already has discussed plaintiff's arguments about her ability to perform daily tasks.  While plaintiff asserts that she is limited in her ability to take care of her children and grandchildren and also to perform household chores and errands, the record contains substantial evidence supporting the ALJ's conclusion that plaintiff "was able to bathe and feed herself[,]" "prepare[ ] simple meals, [do] laundry and shop[ ] on occasion[,]" act as the "primary caretaker for a child with difficulties[,]" and "watch[ ] her toddler grandchildren a couple of hours a month," things that the ALJ found "consistent with an ability to function."  Doc. 8-3 at 36 (AR 35) (citing Doc. 8-7 at 92–102 (AR 331–41)).  Additional record evidence supports the ALJ's

finding.  *See* Doc. 8-7 at 93, 97 (AR 332, 336) (reporting in a July 2020 function report that plaintiff cares for her child by providing "personal care, transportation, preparing meals/feeding, shopping, picking up prescriptions, [and] schoolwork" and that plaintiff can pay bills, count change, handle a savings account, and use a check book); Doc. 8-3 at 52 (AR 51) (testifying that plaintiff watches one of her toddler grandchildren for a couple of hours at a time).

The controlling standard of review won't permit the court to reweigh the evidence about plaintiff's ability to perform these daily living activities or substitute its judgment for the Commissioner's.  *Lax*, 489 F.3d at 1084.  The ALJ correctly supported his decision about plaintiff's ability to perform light work by citing substantial record evidence.  *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (holding that plaintiff's "description of her daily activities did not indicate significant limitations" where she reported an "ability to care for herself, her home and her children" and "stated that she was able to drive, shop, and handle finances; that gardening was a hobby; and that she visited friends and ate out" (internal quotation marks omitted)).  Thus, the ALJ didn't err by concluding that plaintiff has the ability to perform light work, subject to the limitations he included in plaintiff's RFC.  Doc. 8-3 at 32, 38–39 (AR 31, 37–38 ).

Also, the ALJ adequately explained why he did not find the Licensed Medical Social Worker's opinions persuasive.  *See* Doc. 8-3 at 37 (AR 36).  The court disagrees with plaintiff's argument that the ALJ "arbitrarily grant[ed]" a finding of "'persuasiveness' to some medical examiners and not others" and "failed to give appropriate weight to Plaintiff's treating physicians" while "granting greater weight to the opinions of non-examining physicians."  Doc. 10 at 31–32.  Contrary to plaintiff's assertions, the current SSA regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Thus, under these regulations, the "SSA is no longer required to 'give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion[.]'"  *Melanie Lynne H. v. Saul*, No. 20-1028-JWL, 2020 WL 6262193, at *8 (D. Kan. Oct. 23, 2020) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) and discussing effect of latest regulations for evaluating medical opinions).  Instead, "the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding."  *Monique M. v. Saul*, No. 19-1345-JWL, 2020 WL 5819659, at *4 (D. Kan. Sept. 30, 2020) (citing 20 C.F.R. §§ 404.1520c(c)(1–5), 416.920c(c)(1–5) (2017)).  The most important factors for evaluating a medical opinion's persuasiveness are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  An ALJ must consider the supportability and consistency factors, but the regulations don't require him to consider the other three factors.  20 C.F.R. § 404.1520c(b)(2).

The ALJ may discount "[m]edical evidence . . . if it is internally inconsistent or inconsistent with other evidence."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (citation and internal quotation marks omitted).  But, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax*, 489 F.3d at 1084 (citation and internal quotation marks omitted).

The question then, for a district court, is "whether the ALJ properly applied the regulations to determine the persuasiveness of the evidence based primarily on the supportability

and consistency factors as applied to that evidence." *Monique M.*, 2020 WL 5819659, at *6.  If

the ALJ determined the persuasiveness of the evidence properly, "the question remaining is

whether substantial evidence in the record (such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion) supports the ALJ's decision." *Id.*  "An ALJ is not

entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that

are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.

2007).  The ALJ must explain why he adopts some findings but does not adopt others.  *Id.*

Here, the ALJ found the social worker's opinions that plaintiff was unable to work were

"inconsistent" with the record evidence, and thus not supported.  Doc. 8-3 at 37 (AR 36) (citing

Doc. 8-8 at 554, 572, 575–76, 681, 854–67 (AR 916, 934, 937–38, 1043, 1216–29)); *see also id.*

(citing Doc. 8-9 at 116–17, 121 (AR 1382–83, 1387)).  The ALJ explained that the social

worker's opinions weren't consistent "with the medical evidence as a whole including mental

status examinations, daily activities and lack of emergency room or inpatient treatment" and the

records "not[ing] improvement on medication." *Id.*; *see also id.* (concluding that other reports

by social worker were "inconsistent with treatment notes, mental status exams and daily

activities including being primary caregiver for [plaintiff's] child as well as watching her toddler

grandchildren").  The court already has explained that substantial record evidence supports the

ALJ's conclusions about the treatment notes, mental status exams, and plaintiff's reports about

her daily activities and that the evidence supports his finding that the social worker's opinions

weren't consistent with the record evidence as a whole.  *See supra* Part III.B (*supra* at 23).  Thus,

the ALJ adequately set forth his reasons for finding that the social worker's opinions were not

persuasive.  Plaintiff's argument here simply takes issue with the ALJ's finding about the social

worker's opinions.  But it fails to show that the substantial record evidence didn't support the

ALJ's conclusion that the social worker's opinions weren't supported by or inconsistent with the other record evidence.

In sum, the ALJ's conclusion that plaintiff had the RFC to perform substantial gainful activity is supported by substantial evidence in the administrative record.  Thus, the court can't disturb the ALJ's conclusions.

## IV.   Conclusion

After considering the briefs submitted and conducting its own review of the administrative record, the court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's application for Disability Insurance Benefits is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 21st day of March, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**